IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
DAVID TOM, on behalf of himself and others
similarly situated,                                                           Case No.: 1:25-cv-00566-GTS-DJS

                   Plaintiff,

       -against-

DELANCEY STREET GROUP LLC and
MJA HOLDINGS, INC. d/b/a MCA JUSTICE,

               Defendants.
-------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT MJA HOLDINGS, INC.'S MOTION TO DISMISS

**MERLE, BROWN & NAKAMURA, P.C.**
*Attorneys for defendant, MJA Holdings, Inc.*
18 E. 41st Street, Suite 1906
New York, NY 10017
Tel.: 212-471-2990
Mobile: 917-848-2755
Email: s.nakamura@mbnpc.com

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES**……………………………………………………………. i

**INTRODUCTION**…………………………………………………………………… 1

**FACTS**………………………………………………………………………………… 1

**ARGUMENT**………………………………………………………………………. 5

    I.    THE FIRST AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE THE TCPA ONLY APPLIES TO TELEPHONE CALLS, NOT TEXTS…………… 5

        **A.**    **The Holding in Campbell-Ewald**…………………………………….. 6

        **B.**    **An Analysis of 47 U.S.C § 227(c) Reveals that Text Messages Are Not Telephone Calls for TCPA Purposes**………………………….. 7

        **C.**    **The Holding in *Wilson v. Skopos Financial, LLC* is not Persuasive Authority**………………………………………………… 8

    II.    THE FIRST AMENDED COMPLAINT SHOULD BE DISMSSED BECAUSE THE PHONE NUMBER IN QUESTION IS A BUSINESS PHONE NUMBER……….. 9

    III.    THE FAC SHOULD BE DISMISSED BECAUSE THERE IS ONLY ONE TEXT MESSAGE THAT WAS DELIVERD TO PLAINTIFF WITHOUT CONSENT……………………………………………………. 12

    IV.    EVEN IF THE COURT DENIES MJA'S MOTION TO DISMISS THIS ACTION SHOULD BE TRANSFERRED TO THE EASTERN DISTRICT OF NEW YORK…………………………………………………….14

**CONCLUSION**………………………………………………………………………15

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)…..………………………………………………………………. 10

*Austin v. Town of Farmington*,
826 F.3d 622 (2d Cir. 2016)…………………………...……………………………. 10

*Barton v. Delfgauw*,
2025 WL 2402131 (W.D. Wash. August 18, 2025)…...…………………………….. 9

*Cacho v. McCarthy & Kelly LLP*,
739 F.Supp.3d 195 (S.D.N.Y 2024) .……………………………………………… 11

*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016)…..…………………………………………………… 2, 5-7

*Chennette v. Porch.com, Inc.*,
50 F.4th 1217 (9th Cir. 2022)…...………………………………………………10-11

*D.H. Blair & Co., Inc. v. Gottdiener*,
462 F.3d 95 (2d Cir. 2006)……………………………………………………. 15

*Gomez v. Campbell-Ewald Co.*
768 F.3d 871 (9th Cir. 2014)……………………………………………………… 6

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
Report and Order, 18 FCC Rcd. 14014 (July 3, 2003)…………………………… 6

*Jones v. Blackstone Medical Services, LLC*,
2025 WL 2042764 (C.D. Ill. July 21, 2025)...………………………………… 5, 7-9

*Kerson v. Vermont Law School, Inc.*,
79 F.4th 257 (2d Cir. 2023)……………………………………………………….. 8

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024)……………………………………………………………… 7

*Mantha v. QuoteWizard.com, LLC*,
2022 WL 325722 (D. Mass. Feb. 3, 2022)………………………………………… 11

*McLaughlin Chiropractic Assoc., Inc. v. McKesson Corp.*,
606 U.S. 146 (2025)……………………………………………………………5, 7, 9

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009)……………………………………………………… 6-7, 9

*Tom v. Consider Solar*,
    24-cv-01100 (E.D. Va. 2024) …………………………………………………….. 4

*Wilson v. Skopos Financial, LLC*, 2025 WL 2029274
    (D. Or. July 21, 2025)……...…………………………………………………… 8-9

## **Statutes**

Fed. R. Civ. Proc. Rule 12(b)(3)…………………………………………………… 1, 14

Fed. R. Civ. Proc. Rule 12(b)(6)…………………………………………………. 1, 10

18. U.S.C § 921(a)…………………………………………………………………3

18 U.S.C. § 922(a)…………………………………………………………………3

28 U.S.C § 1404 (a) ……………………………………………………….. 1, 14

28 U.S.C § 1406 (a)……………………………………………………………….1, 14

47 U.S.C. § 227(b)……………………………………………………………… 6-7,9

47 U.S.C. § 227(c) …………………………………………………….. 5-11, 13, 14

47 C.F.R. § 64.1601(e) ……………………………………………………………5

47 C.F.R. § 64.1200(c) ……………………………………………………………5

47 C.F.R. § 64.1200(f)(15)…………………………………………………………13

## INTRODUCTION

Defendant MJA Holdings, Inc., by its attorneys, Merle, Brown & Nakamura, P.C., submits this memorandum of law in support of its motion to dismiss the First Amended Complaint of plaintiff David Tom pursuant to Rules 12(b)(6) and 12(b)(3) of the Federal Rules of Civil Procedure, or alternatively, if the motion to dismiss is not granted, to transfer this action from the Northern District of New York to the Eastern District of New York pursuant to 28 U.S.C. §§ 1406(a) or 1404(a).

## FACTS

The plaintiff, David Tom ("Tom" or "Plaintiff") is an individual. (FAC ¶ 4)[1]  Mr. Tom's First Amended Complaint (the "FAC") provides no indication as to where he resides.  However, according to the last fourteen (14) Telephone Consumer Protection Act ("TCPA") class action complaints brought by Mr. Tom in the past three (3) years, it appears that Mr. Tom resides in Brevard County, Florida. *See* Nakamura Decl. ¶ 4.[2]

Defendant Delancey Street Group LLC ("Delancey") is a Delaware Limited Liability Company that conducts business at 104 W 40th Steet, New York, New York 10018. [*See* ECF No. 10 at p. 14][3] Delancey is engaged in the business of providing professional debt settlement services to clients with unsecured debts. [*Id.* at 2]  Defendant MJA Holdings, Inc. ("MJA") is a New York corporation that conducts business at 20 Broadhollow Road, Melville, New York.  MJA operates

---

[1]    Citations to "FAC" refer to Plaintiff's First Amended Complaint, the allegations of which are deemed to be true for the purposes of this motion to dismiss.  If called to answer, MJA will deny most, if not all, of the allegations and legal conclusions in the FAC directed at MJA.

[2]    Citations to the "Nakamura Decl." refer to the Declaration of Stephen Nakamura in Support of Defendant MJA Holdings, Inc.'s Motion to Dismiss.

[3]    Citations to ECF No. 10, refer to Delancey's "*Memorandum of Law In Support of Defendant Delancy Street Group LLC (Improperly Pled as Delancey Street Group LLC D/B/A MCA Justice*".

as an independent sales organization that provides sales and marketing services to various entities, including co-defendant, Delancey. *See* Arner Decl. ¶ 6.[4]  In March of 2025, MJA was also using the brand name "MCA Justice" to provide its independent sales organization services to Delancey and others. *Id.*, ¶¶ 7-8.

At the heart of Plaintiff's complaint are the allegations that Mr. Tom received eight (8) text messages in violation of the TCPA and its implementing regulations.  Citing the Supreme Court's holding in *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016), Plaintiff alleges, as a matter of fact and law, that text message are "calls" for the purposes of the TCPA. *See* FAC ¶ 73.  He further alleges that he did not consent to the texts (there were no actual telephone calls placed) and that the texts were unwanted. *See* FAC ¶¶ 74, 77.  However, according to the FAC, on March 6, 2025, John Guzzetti, who is a former independent contractor of MJA (*see* Arner Decl. ¶ 10), had a text exchange with Plaintiff which began as follows:

| | |
|---|---|
| Guzzetti: | "Hi, it's John with MCA Justice.  Would it help if we cut your daily weekly payments by 80% and convert to monthly?  Reply "Yes" for more information  Text STOP to opt out. |
| Plaintiff: | **Yes** |
| Guzzetti: | Can you send me your email so I can forward you what I need to get started. |
| Plaintiff: | Sure. David.m.tom@gmail.com |
| Plaintiff: | Don't text me email me only – **about to board a plane no cell signal so WiFi works a lot better.** |
| Guzzetti: | I just emailed you from john@mca-justice.com.  The subject line is MCA Justice. I look forward to working with you.  Thank you for the opportunity.  Please confirm receipt." |

FAC ¶ 33 (emphasis added).

---

[4]     Citations to the "Arner Decl." refer to the Declaration of Marc Arner in Support of Defendant MJA Holdings, Inc.'s Motion to Dismiss.

Mr. Guzzetti sent several follow-up text messages to Mr. Tom on March 6th, 7th, 8th and 10th asking whether Plaintiff had received Mr. Guzzetti's email, whether he had questions about the email, and whether he had a chance to review the email. *Id.*  On March 6, 2025, Plaintiff and Mr. Guzzetti began emailing with each other. *See* FAC ¶¶ 38-39.  The FAC contains no further allegations that Mr. Guzzetti, or anyone associated with MJA, called or texted Plaintiff; and the FAC contains no allegations that after Plaintiff replied "Yes" to the first text message, he thereafter requested that communications cease.  Rather, as set forth in paragraph 33 of the FAC, Plaintiff requested that further communications be sent via email given that he would be on an airplane and have no phone signal. *See* FAC ¶ 33.

The telephone number to which the texts were sent is: 321-917-0760. *See* ECF No. 10, p. 1.  Plaintiff alleges that this telephone number is a residential, non-commercial telephone number used for personal, residential and household reasons. *See* FAC ¶¶ 18-20.  However, according to publicly available information that can be downloaded from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF")'s website at https://www.atf.gov/firearms/listing-federal-firearms-licensees, the telephone number 321-917-0760 is a business number for the business Tom & Company, LLC ("Tom & Co."), which does business under the name Goingquiet.com, and which is a Federal Firearms Licensee ("FFL").  *See* Nakamura Decl. ¶ 6; ECF No. 9, ¶8, Ex. F.[5] Additional publicly available information downloadable from the Florida Secretary of State confirms that Plaintiff either owns or controls Tom & Co, and that Goingquiet.com is a fictious business name of Tom & Company. *See* Nakamura Decl., Ex. C.

Plaintiff further alleges, citing 18 U.S.C. § 922(a)(1)(A) and 921(a)(21)(A) that he does not use the telephone number in the "regular course of trade or business with the principal objective

---

[5]    Citations to ECF No. 9 refer to the June 23, 2025 Declaration of Thomas Leghorn submitted in support of Delancey's motion to dismiss.

3

of livelihood and profit." FAC ¶ 24.  However, according to the website https://www.ffls.com/, while Tom & Co.'s FFL expired on July 1, 2025, Tom & Co.'s license was updated and is valid through July 1, 2028. *See* Nakamura Decl., Ex. D  The information on Tom & Co.'s website is consistent with the information available on the ATF's EZCheck system available on the ATF's website at https://fflezcheck.atf.gov/FFLEzCheck/. *Id.*, Ex E.  And, again, the telephone number at issue (312-917-0760) is the number on file with the ATF.[6]  Moreover, a basic Google Search of the number 312-917-0760 reveals that this number is in fact the business number for Goingquiet.com  Although the number was scrubbed from the Goingquiet.com website in September 2024 (*see* Nakamura Decl., Ex. G), whoever scrubbed the website neglected to remove the underlying metadata.  As a result, the business number 312-917-0760, is still clearly displayed on Google search results as being the contact number for Goingquiet.com. *See* Nakamura Decl. ¶ 8(h), Ex. H.

In addition, although Plaintiff alleges that the number at issue is a non-commercial telephone number, Mr. Tom does in fact also have an actual residential copper landline, bearing the number 321-7XX-XXX. *See* Nakamura Decl. ¶ 5, Ex. A.  With respect to the only other non-TCPA litigation that MJA was able to locate where Mr. Tom is a plaintiff, the number he used to identify himself personally was: (321)-7XX-XXXX, and not the 312-917-0760 Tom & Co. business number (*see* Nakamura Decl. ¶ 7, Ex. B), despite the fact that Mr. Tom has had both numbers since at least 2003. *See Tom v. Consider Solar*, ¶¶ 27-28.

Nevertheless, it is upon eight (8) text messages sent by Mr. Guzzetti to a business telephone number, seven (7) of which were sent after Mr. Tom consented to receiving further information

---

[6]    Given the sheer volume of TCPA class action lawsuits that Mr. Tom has filed in the past three years, MJA submits that Mr. Tom uses both of his numbers in the regular course of the business of being a professional TCPA plaintiff with the principal objective of livelihood and profit.

under the pre-tense that email was preferable to text due to WiFi issues (*see* FAC ¶ 33), that Plaintiff now brings a Federal TCPA Class Action lawsuit against Defendants.  In so doing, Plaintiff asserts three claims: 1) an injunction and damages under 47 U.S.C. § 227(c)(5) for violations of 47 C.F.R. § 64.1200(c)(2) arising out of alleged telephone solicitations made to a residential telephone subscriber on the National Do Not Call Registry (*see* FAC ¶¶ 88-91); 2) an injunction and damages under 47 U.S.C. § 227(c)(5) for violations of 47 C.F.R. § 64.1601(e)(1) arising out of the alleged initiation of telephone calls by Defendants without transmitting the name of the telemarketer despite such option for transmission of CNAM information available by Defendants' carrier (*see* FAC ¶¶ 94-98); and 3) the trebling of damages pursuant to 47 U.S.C. § 227(c)(5) due to Defendants' alleged willful or knowing conduct. *See* FAC ¶¶ 100-102.

Defendant MJA now moves to dismiss the FAC in its entirety, with prejudice, and without leave to replead; or in the event that MJA's motion to dismiss is not granted, MJA moves to transfer the venue of this action to the Eastern District of New York, where MJA conducts business.

## ARGUMENT

I.   THE FIRST AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE THE TCPA ONLY APPLIES TO TELEPHONE CALLS, NOT TEXTS.

There is no question that the litigation before the Court concerns eight (8) text messages sent to the cellular telephone phone number: 321-917-0760.  Plaintiff does not allege that MJA, or anyone acting on MJA's behalf, placed a telephone call to Plaintiff.  The FAC alleges, citing *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 153 (2016), that text messages are telephone calls for the purposes of the TCPA. FAC ¶ 73.  However, Plaintiff's reliance on *Campbell-Ewald* ignores the directive of the Supreme Court's ruling in *McLaughlin Chiropractic Assoc., Inc. v. McKesson Corp.,* as well as the analysis conducted by the Central District of Illinois pursuant to this mandate in *Jones v. Blackstone Medical Services, LLC*, wherein the Court held that text message are not

5

telephone call for the purposes of TCPA claims brought under 47 U.S.C. 227(c) – which is the statute under which all of Plaintiff's claims are brought in the matter before this Court.

### A.    The Holding in Campbell-Ewald.

In *Campbell-Ewald*, the Supreme Court resolved two issues: 1) that an unaccepted offer to satisfy the named class action plaintiff's individual claim does not render a case moot on behalf of the entire class; and 2) that a government contractor is not entitled to derivative sovereign immunity and is thus not shielded from suit in connection with its performance under the government contract.   In reaching this decision, the Supreme Court, citing *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 874 (9th Cir. 2014) stated: "A text message to a cellular telephone, it is undisputed, qualifies as a "call" within the compass of § 227(b)(1)(A)(iii)." *Campbell-Ewald Co.*, 577 U.S. at 156.  Section 227(b)(1)(A)(iii) is that portion of the TCPA that applies to the use of automatic telephone dialing systems or an artificial or prerecorded voice "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii).

In *Gomez*, the 9th Circuit stated: It is undisputed that a text message constitutes a call for the purposes of this section. *Gomez*, 768 F.3d at 874.  In so doing, the *Gomez* Court relied upon its decision in *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009).  In *Satterfield*, the 9th Circuit addressed automated telephone dialing systems under § 227(b)(1)(A)(iii) and stated:

> "While the TCPA does not define "call," the FCC has explicitly stated that the TCPA's prohibition on ATDSs "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls...." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Report and Order, 18 FCC Rcd. 14014, 14115 (July 3, 2003) (hereinafter "2003 Report and Order")." . . . Therefore, the FCC has determined that a text

message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)."

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009)

What is clear from the decisions in *Campbell-Ewald Co.*, *Gomez* and *Satterfield* is that the Courts, in reaching the conclusion that text message constitute telephone calls for the purposes of 47 U.S.C. § 227(b)(1)(A), were fully relying upon, and considered themselves bound by, the prior underlying determination of the FCC; and did so without undertaking an independent statutory analysis of 47 U.S.C. § 227(b)(1)(A) and its implementing regulations.  However, due to the recent decision in *McLaughlin Chiropractic Assoc., Inc. v. McKesson Corp.*, the Supreme Court has made it clear that in an enforcement proceeding such as the one before this Court:

> "[A] district court must independently determine for itself whether the agency's interpretation of a statute is correct. District courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation."

*McLaughlin Chiropractic Assoc., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025) (citing *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 402 (2024)).

**B.      An Analysis of 47 U.S.C § 227(c) Reveals that Text Messages are Not Telephone Calls for TCPA Purposes**.

In considering the directive in *McLaughlin*, a recent District Court decision from the United States District Court for the Central District of Illinois, although not binding on this Court, provides a strong and thorough rationale for finding that text messages do not constitute telephone calls for the purposes of 47 U.S.C. § 227(c), a holding that MJA submits that this Court should adopt.  In *Jones v. Blackstone Medical Services, LLC*, the Court held:  "[B]ased on a plain reading of the TCPA and its implementing regulations, Section 227(c)(5) [of the TCPA] does not apply to text messages." *Jones v. Blackstone Med. Services, LLC*, 2025 WL 2042764, at *3 (C.D. Ill. July 21, 2025)

In reaching this conclusion, the Court conducted a basic statutory analysis. In so doing, the *Jones* Court stated: "Under principles of statutory interpretation, a court must start with the text of a statute to ascertain its plain meaning." *Jones*, 2025 WL 2042764, at *4. This is consistent with Second Circuit precedent: "When interpreting a statute, we begin, as always, by giving effect to the plain meaning of the text—and, if that text is unambiguous, our analysis usually ends there as well." *Kerson v. Vermont Law School, Inc.*, 79 F.4th 257, 265 (2d Cir. 2023)

The *Jones* Court further notes that Section 227(c)(5) explicitly refers to a "telephone call", and that while Section 227(a)(4) refers to a "telephone call or message", the TCPA could not have been interpreted in 1991 (when the statute was enacted) to include a telephone call or "text message" because text messaging technology was not available in 1991 (the first text having been sent in December 1992). *See generally* Jones, at *4. Accordingly, the *Jones* Court held, and correctly so, that "the TCPA does not regulate text messages[]" (*Id.*), because, as the Court reasoned, "[i]it is not for a court to legislate by reading into the TCPA something that is not there." *Id.*, at *5. To this end, the Court further reasoned: "It is for Congress to respond to the issues presented in this case and to address the realties of today's technology (and the intrusions caused therefrom) which is commonplace in American life in 2025." *Id.*

**C.      The Holding in *Wilson v. Skopos Financial, LLC* is not Persuasive Authority.**

MJA acknowledges that on the same day the *Jones* Court handed down its decision (July 21, 2025), the United States District for the District of Oregon issued its decision in *Wilson v. Skopos Financial, LLC*, 2025 WL 2029274 (D. Or. July 21, 2025) in which it held that "[t]he cause of action provided for in § 227(c)(5) includes text messages." *Wilson*, 2025 WL 2029274, at *4. Despite this ruling, MJA submits that the holding in *Wilson* is not persuasive, or is certainly less persuasive than the holding in *Jones*, for two reasons.

8

First, the *Wilson* Court, in relying heavily on FCC guidance and the Ninth Circuit's decision in *Satterfield* with respect to § 227(b), did not undertake an independent determination of the FCC's interpretation of the TCPA.  In so doing, the *Wilson* Court reasoned away the non-existence of text messaging technology in 1991 by stating: "The mere fact that Congress did not envision the ubiquitousness of text messaging in 1991 does not mean the FCC's conclusion lacks support." While it may be true that the FCC's conclusion has support, the *Wilson* Court did not review the plain language of the statute, and if it had, it should have reached the same conclusion as the Court in *Jones*, namely, that the plain meaning of § 227(c)(5) does not apply to text messages.

Second, notwithstanding the failure of the *Wilson* Court to adhere to the directive in *McLaughlin*, any argument that the TCPA does not apply to text message has been held foreclosed in the Ninth Circuit (where the *Wilson* Court is located) given the Ninth Circuit's decision in *Satterfield,* which as determined by the United States District Court for the Western District of Washington, is not "irreconcilable" with the Supreme Court's decision in *McLaughlin*. *See Barton v. Delfgauw*, 2025 WL 2402131, at *n.1 (W.D. Wash. August 18, 2025) (declining to entertain Plaintiff's reliance on *Jones v. Blackstone* given Ninth Circuit precedent established by *Satterfield*).  To this end, MJA submits that any decision from the Ninth Circuit should be treated with circumspection and accorded limited persuasive weight in this Court.  Accordingly, MJA urges this Court to adopt the reasoning in Jones and similarly find that all of Plaintiff's claims brought pursuant to 47 U.S.C. § 227 (c)(5), should be dismissed because text messages are not calls for the purposes of the TCPA.

II.    THE FIRST AMENDED COMPLAINT SHOULD BE DISMSSED BECAUSE THE PHONE NUMBER IN QUESTION IS A BUSINESS PHONE NUMBER.

The telephone number at issue in the case, 321-917-0760, is a business phone number which is not entitled to TCPA protection.  All three of Plaintiff's claims against MJA are brought

9

pursuant to 47 U.S.C. § 227(c)(5).  Section 227 (c) and its implementing regulations only apply to "residential" telephone subscribers. *See Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1223 (9th Cir. 2022).  The FAC admits as much: "The TCPA prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry." FAC ¶ 10; "The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers on the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. FAC ¶ 13

Admittedly, the FCC has previously determined that there is a presumption that subscribers that are on the national do-not-call list are "residential" subscribers.   Further, it is well settled that with respect to a motion to dismiss under Rule 12(b)(6), the Court should accept the Plaintiff's factual allegations as true, and should construe all reasonable inferences in favor of the non-moving party. *See Austin v. Town of Farmington*, 826 F.3d 622, 625 (2d Cir. 2016).  However, this deference to a Plaintiff's allegations does not apply to legal conclusions (*see Ashcroft v. Iqbal*, 556 U.S. 662 (2009)); and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678.

In the matter before this Court, Plaintiff's allegations with respect to his purported "residential" telephone number are plainly threadbare recitals and legal conclusions.   The entirety of these allegations can be found at paragraphs 19 through 22 of the FAC:

> "Plaintiff's telephone number, (321) XXX-XXXX, is a residential, noncommercial telephone number. Mr. Tom uses the number for personal, residential, and household reasons. The number is a residential telephone line because it is assigned to a residential telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses. Moreover, the telephone line is assigned to a cellular service which is presumptively residential and was eligible for registration on the National Do Not Call Registry at the time it was registered."

10

FAC ¶¶ 19-22

Notably, despite the fact that co-defendant Delancey's motion to dismiss Plaintiff's original complaint clearly identified the number in question as a business number, the allegations in the FAC remain verbatim identical to the allegations of Plaintiff's original complaint. *See* ECF No. 1 ¶¶ 18-21. Whether Section 227(c) applies to Plaintiff's claims "depends on the type of subscriber and the function for which the subscriber uses the phone rather than on the particular technology the subscriber uses." *Cacho v. McCarthy & Kelly LLP*, 739 F.Supp.3d 195 (S.D.N.Y. 2024) (citing *Mantha v. QuoteWizard.com, LLC*, 2022 WL 325722, at *4 (D. Mass. Feb. 3, 2022)). To this end, the presumption that a cell phone is residential can be rebutted. *See Chennette*, 50 F.4th at 1225. In *Chennette*, the Court set forth the following factors (mirroring factors used to assess whether a mixed-use phone is residential) in determining whether the presumption is rebutted:

> "(1) how plaintiffs hold their phone numbers out to the public; (2) whether plaintiffs' phones are registered with the telephone company as residential or business lines; (3) how much plaintiffs use their phones for business or employment; (4) who pays for the phone bills; and (5) other factors bearing on how a reasonable observer would view the phone line." *Id.*

With respect to these factors, beyond alleging the number is assigned to a residential telephone exchange service for consumers; and the conclusory assertion that the number is used for personal, residential and household reasons, the FAC contains no allegations as to what Plaintiff uses the phone for, how much he uses the phone for business or employment, who pays the phone bill (or whether phone expenses are deducted as expenses), or any other factors bearing on how a reasonable observer would view the phone line.

In the matter before this Court, Plaintiff tries to overcome the fact that the number, 321-917-0760, is a business number not by enhancing his allegations as to how his number is a "residential" number, but by instead alleging (again in conclusory fashion) that the telephone is

not a business number because it does not fall under the definition of "engaged in the business" under the Federal Gun Control Act. *See* FAC ¶ 24. Plaintiff therefore concludes that he does not use the number at issue in this litigation for his business. *Id.* However, publicly available records make it clear that is precisely what he does.

Publicly available information (from the ATF website no less) makes it clear that 321-917-0760 is the telephone number associated with Tom & Company d/b/a Goingquiet.com's Federal Firearms License. *See* Nakamura Decl. ¶ 6; ECF No. 9 ¶ 8, Ex. F. While Plaintiff claims that he does not use the number for business, this is an implausible assertion given that Tom & Company's FFL expired on July 1, 2025 but was apparently renewed and now expires on July 1, 2028. *See* Nakamura Decl., Ex. D. A simple Google search demonstrates, despite the best efforts of someone to scrub 321-917-0760 from the Goingquiet.com website, that the contact number for Goingquiet.com is plainly the telephone number 321-917-0760. *Id.*, Exs. F, G and H. Moreover, in the only non-TCPA litigation that MJA has been able to locate where Mr. Tom is a *pro se* Plaintiff, he did not use the 321-917-0760 number when he signed the complaint (*see* Nakamura Decl. ¶ 5, Ex. B), he used a different number, which he admitted in a separate TCPA litigation is his copper wired residential landline (which obviously is Plaintiff's residential phone number). *Id.* ¶ 5, Ex. A.

In the face of publicly available information that directly contradicts the allegations in Plaintiff's complaint that 321-917-0760 is not a business number (FAC ¶ 24), and that he does not advertise it on his business website (FAC ¶25), it is implausible to conclude that the number at issue in this litigation is anything but a business number. As a result, Plaintiff's FAC should be dismissed, with prejudice, and without leave to replead.

III.   THE FAC SHOULD BE DISMISSED BECAUSE THERE IS ONLY ONE TEXT MESSAGE THAT WAS DELIVERD TO PLAINTIFF WITHOUT CONSENT.

12

The private right of action provided for in Section 227 § (c)(5) is clear that it only applies to a "person who has received **more than one telephone call** within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection. 47 U.S.C. § 227(c)(5) (emphasis added).  Pursuant to 47 C.F.R. 64.1200(f)(15)(i), the term telephone solicitation means:

> "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message: (i) To any person with that person's prior express invitation or permission . . . ."

Assuming that text messages are calls for the purposes of the TCPA, based on the allegations of paragraph 33 of the FAC, there is only one text, **not more than one**, that could be deemed violative of § 227(c)(5).  On March 6, 2025, Plaintiff received the first text message, it stated: "Hi, it's John with MCA Justice.  Would it help if we cut your daily weekly payments by 80% and convert to monthly?  Reply "Yes" for more information[.]  Text STOP to opt out".  Plaintiff clearly replied, **"Yes"**. FAC ¶ 33.

By replying "Yes" Plaintiff's conduct constitutes a prior express invitation or permission for further text messages.  This interpretation is bolstered by the fact that Plaintiff's subsequent text message to MCA Justice created a sense of desire and urgency for further communications.  Plaintiff texted: "Don't text me email me only – **about to board a plane no cell signal so WiFi works a lot better.**" FAC ¶ 33 (emphasis added).  Plaintiff's communication did not revoke his invitation or permission for further communication.  Rather, he indicated that he wanted to be emailed because he was about to board an airplane, not because he did not want to be texted, thereby suggesting strong interest in receiving further communications.  Alternatively, Plaintiff's conduct evidences an effort to sandbag MJA by inviting further texts to inquire whether Plaintiff

13

received a clearly welcome email communication.  Nevertheless, what is clear is that under any interpretation, Plaintiff did not provide clear instructions that he no longer wished to receive telephone solicitations.

Given the foregoing, every text sent after the first text to which Plaintiff replied "Yes" were not prohibited by the TCPA, they were permitted by Plaintiff.  As a result, there was **only one** "call" that was made and thus Plaintiff cannot maintain an action against MJA pursuant to 47 U.S.C. § 227(c)(5).

IV.     <u>EVEN IF THE COURT DENIES MJA'S MOTION TO DISMISS, THIS ACTION SHOULD BE TRANSFERRED TO THE EASTERN DISTRICT OF NEW YORK</u>.

This litigation has no meaningful connection to the Northern District of New York ("NDNY").  Plaintiff is a Florida resident. *See e.g.*, Nakamura Decl., Exs. A and B.  Delancey is a Delaware limited liability that conducts business in New York County, located in the Southern District. *See* ECF No. 10, p. 6.  MJA is a New York Corporation that conducts business in Melville, NY, located in the Eastern District. *See* Arner Decl. ¶ 4.  Plaintiff's claims are based on text messages received from a number registered to Babylon, NY, which is also in the Eastern District. FAC ¶ 33.  Venue in the Northern District of New York is clearly improper.   As a result, in the event this matter is not dismissed pursuant to Rule 12(b)(6), the Court should nevertheless dismiss this case pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406(a), or alternatively transfer this action to the Eastern District of New York pursuant to 28 U.S.C. § 1404(a) for convenience reasons.

Assuming this matter is not dismissed, the factors a district court is to consider in determining whether to transfer venue are *inter alia:* "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability

14

of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir. 2006).

Here, the convenience of Plaintiff, a serial TCPA litigant, is a non-issue since whether he is in the Northern District or Eastern District, he will need to travel to New York. Indeed, considering that both Laguardia and JFK are in the Eastern District, it is arguably more convenient for Plaintiff for this matter to move forward in the Eastern District. As for sources of proof and the locus of operative facts, the allegations of the FAC concern alleged text messages sent by MJA, which is located in the Eastern District. *See* Arner Decl. ¶¶ 9-11. MJA's witnesses and documents are located in the Eastern District – where witnesses can be compelled to attend trial. Further it would be a great financial burden on MJA to have a trial in this matter in the Northern District, which can take anywhere from 3.0 to 5.0 hours by car from MJA's office. Furthermore, any trial of this matter in the Northern District would place an extreme burden on MJA; and would be cost prohibitive. *Id.* ¶ 12. Accordingly, if this matter is not dismissed, MJA submits that the interests of justice and the convenience of the parties warrant transfer of this litigation to the Eastern District of New York.

## CONCLUSION

For the foregoing reasons, defendant MJA Holdings, Inc. requests that the Court grant its motion to dismiss, and dismiss Plaintiff's FAC in its entirety, with prejudice, and without leave to replead, or in the alternative, transfer this action to the United States District Court for the Eastern District of New York.

Dated: August 22, 2025
    New York, New York          Respectfully submitted,

By:    _____
                 Stephen Nakamura

15

MERLE, BROWN & NAKAMURA, P.C.
*Attorneys for defendant, MJA Holdings, Inc.*
18 E. 41st Street, Suite 1906
New York, NY 10017
Tel. 212-471-2990, Ext. 105
Email: s.nakamura@mbnpc.com