**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NOTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
DAVID TOM, on behalf of himself and others
similarly situated,                                                    Case No.: 1:25-cv-00566-GTS-DJS

                       Plaintiff,

          -against-

DELANCEY STREET GROUP LLC and
MJA HOLDINGS, INC. d/b/a MCA JUSTICE,

                    Defendants.
-----------------------------------------------------------X

## <u>REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT MJA HOLDINGS, INC.'S MOTION TO DISMISS</u>

**MERLE, BROWN & NAKAMURA, P.C.**
*Attorneys for defendant, MJA Holdings, Inc.*
18 E. 41st Street, Suite 1906
New York, NY 10017
Tel.: 212-471-2990
Mobile: 917-848-2755
Email: s.nakamura@mbnpc.com

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** …………………………………………………………………..(ii)

**INTRODUCTION** ………………………………………………………………………….1

**SUMMARY OF PLAINTIFF'S OPPOSITION** ……………………………………………1

**REPLY ARGUMENT** ……………………………………………………………………...1

    I.      PLAINTIFF'S PHONE NUMBER IS A BUSINESS PHONE NUMBER ……………….1

    II.     THERE WAS NO TEXT SENT IN VIOLATION OF THE
          REGULATIONS PRESCRIBED UNDER 47 U.S.C § 227(c)(5) …………………………6

    III.    THE TCPA DOES NOT APPLY TO TEXT MESSAGES ………………………………..7

    IV.    NIETHER DEFENDANT RESIDES IN THE NORTHERN
          DISTRICT OF NEW YORK …………………………………………………………...8

**CONCLUSION** …………………………………………………………………………10

i

## **TABLE OF AUTHORITIES**

<u>Cases</u>

*A.M. Owners Mut. Protection and Indem. Assn., Inc. v. United States*,
    489 F.Supp.3d 106 (E.D.N.Y. 2020) …………………………………………...8 at n.2

*BFP v. Resolution Tr. Corp.*,
    511 U.S. 531 (1994) …………………………………………………………………….6

*Campbell-Ewald Co. v. Gomez*,
    577 U.S. 153 (2016) …………………………………………………………………….7

*Compare New Prime Inc. v Oliviera*,
    586 U.S. 105 (2019) …………………………………………………………………….7

*Davis v. CVS Pharm., Inc.*,
    No. 24-CV-477, 2025 WL 2491195 (N.D.Fla. Aug. 26, 2025) …………………………….8

*Facebook, Inc. v. Duguid,*
    592 U.S. 395 (2021) …………………………………………………………………….8

*Gibbs v. SolarCity Corp.*,
    239 F. Supp.3d 391 (D. Mass. 2017) …………………………………………………6

*In re New Haven Projects Ltd. Liab. Co.*,
    225 F.3d 283 (2d Cir. 2000) ……………………………………………………………..6

*Jones v. Blackstone Med. Services, LLC*,
    2025 WL 2042764 (C.D.Ill. July 21, 2025) …………………………………………….7, 8

*Kerson v. Vermont Law School, Inc.*,
    79 F.4th 257 (2d Cir. 2023) ……………………………………………………………...8

*McLaughlin Chiropractic Assoc., Inc. v. McKesson Corp.*,
    606 U.S. 146 (2025) …………………………………………………………………….7

*Thorne v. Sq., Inc.*,
    20-CV-5119-NGG-TAM, 2022 WL 542383 (E.D.N.Y. Feb. 23, 2022) …………………….3

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
    127 F.Supp.3d 156 (S.D.N.Y. 2015) …………………………………………………….3

*Williams v. PMA Cos., Inc.*,
    419 F.Supp.3d 471 (N.D.N.Y. 2019) …………………………………………………….3

<u>Statutes</u>

Fed. R. Evid. 201 ………………………………………………………………………3

Fed. R. Civ. Proc. 12(b) ……………………………………………………………..1, 10

28 U.S.C § 1391 ……...…………………………………………………………………..9

28 U.S.C. § 1404    …………………………………………………………….....……..1

28 U.S.C. § 1406    …………………………………………………………….....……..1

47 U.S.C. § 227    …………………………………………………………….....6,  7, 8

## INTRODUCTION

Defendant MJA Holdings, Inc. ("MJA"), by its attorneys, Merle, Brown & Nakamura, P.C., submits this reply memorandum of law in further support of its motion to dismiss the First Amended Complaint of plaintiff David Tom ("Plaintiff") pursuant to Rules 12(b)(6) and 12(b)(3) of the Federal Rules of Civil Procedure, or alternatively, if the motion to dismiss is not granted, to transfer this action from the Northern District of New York ("N.D.N.Y") to the Eastern District of New York ("E.D.N.Y") pursuant to 28 U.S.C. §§ 1406(a) or 1404(a).

## SUMMARY OF PLAINTIFF'S OPPOSITION

Plaintiff's opposition to MJA's motion contains four arguments: 1) that his telephone number is a residential number; 2) that Plaintiff only needed to receive one text message in order to bring this action; 3) that the TCPA applies to text messages; and 4) that both MJA and co-defendant Delancey Street Group ("DSG") reside in the N.D.N.Y. As demonstrated below, Plaintiff's arguments are without merit and MJA's motion should therefore be granted.

## REPLY ARGUMENT

I.    PLAINTIFF'S PHONE NUMBER IS A BUSINESS PHONE NUMBER.

MJA's original moving papers demonstrated that the contact number for Plaintiff's business, Tom & Company d/b/a Goingquiet.com, is the phone number at issue in this litigation, despite someone's best efforts to scrub that number from Plaintiff's website. [*See* ECF Nos. 28-7, 28-8 and 28-9]  Both MJA's and DSG's moving papers also demonstrated that 321-917-0760 number is the telephone number that is associated with Plaintiff's expired and current Federal Firearms License. [*See* ECF No. 28, ¶ 6; ECF Nos. 28-5 and 28-6; ECF No. 9, ¶ 8 and Ex. F]

Plaintiff's opposition does not challenge the authenticity of the evidence submitted by MJA and DSG.  Instead, the Declaration of David Tom (the "Tom Declaration") submitted in opposition

to DSG's motion, the allegations of which Plaintiff has incorporated by reference in opposition to MJA's motion [*see* Opp. Memo. at 14][1], continues to assert that 321-917-0760 is a residential number. To this end, in the Tom Declaration, Plaintiff swears under penalties of perjury, *inter alia*, the following:

- "I do not use the 321-number in the regular course of trade or for the principal objective of livelihood or profit." [Tom Declaration, ¶ 11]

- "**Years ago, I stopped** using [the] 321- number as a **business number**. The only reason I maintain this number today is because it is listed on my ATF Federal Firearms License application forms as a "Telephone Number (Personal Contact # with Area Code)," as required by the ATF. It was **not intentionally advertised** on my website, **nor is it held out to customers or the public** as my business number. . . ." [*Id.*, ¶ 13 (emphasis added)]

- "The ATF requires licensees to maintain emergency personal and cellular telephone numbers for use by federal agents in conducting firearm traces or other agent compliance matters. My 321- number serves that limited purpose in connection with Going Quiet **and nothing more**." [*Id.*, ¶ 14 (emphasis added)]

- "As public records, however, my FFL and SOT applications and renewals sometimes are **erroneously classified or included in third-party databases**, and include such private, personal numbers, including by the listing as a "required business contact" when in reality the number is a required personal contact number by ATF." [*Id.*, ¶ 19 (emphasis added)]

- "To the extent that the 321- number appears on my business website or in Google search results, **that is an error**. My website is administered by a third-party e-commerce platform, GearFire, which at one point **repopulated my old number without my consent**, possibly as part of a website update. I had the number removed years ago, **but it was later re-added in error**, and I had to call back to have it corrected." [*Id.*, ¶ 23 (emphasis added)]

- "The same is true of my **Google Maps listing**, which at one point **erroneously displayed the 321- number**, despite my prior removal. That was **not intentional on my part**, and I took steps to correct the listing to reflect my actual business number." [*Id.*, ¶ 24 (emphasis added)]

- "The **argument that the 321- number is "business"** because it appears in those listings **is therefore misleading**. . . . It is not used to solicit customers, generate

---

[1] Citations to "Opp. Memo" refer to Plaintiff's Response in Opposition to Defendant MJA Holdings, Inc.'s Motion to Dismiss.

> business, or conduct commerce, nor is it used in the course of trade or for the principal objective of livelihood or profit, . . ." [*Id.*, ¶ 25 (emphasis added)]

- "Thus, at all times pertinent, the 321- number was a noncommercial number." [Id., ¶ 26]

Despite Plaintiff's protestations and excuses, the Tom Declaration does in fact admit that at some point in time 321-917-0760 was in fact a business number: "Years ago, I stopped using [the] 321- number as a business number. . . ." [Tom Declaration, ¶ 13] Of course, this language is designed to imply that Mr. Tom ceased using his number as a business number many years ago. However, a review of the Going Quiet archived webpages available from Archive.org via the Wayback Machine makes it clear that 321-917-0760 was the business number that appeared on the Going Quiet Website from 2011 through November 2024. [*See* Nakamura Decl., Ex. G][2]

MJA respectfully requests that the Court take judicial notice of the Wayback Machine webpages. As this Court has held: "A court may take judicial notice at "any stage of the proceeding," of any fact "that is not subject to reasonable dispute because" it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Williams v. PMA Cos., Inc.*, 419 F.Supp.3d 471, 482 (N.D.N.Y. 2019) (citing Fed. R. Evid. 201(b)(2), (d)). Moreover, "a court may take judicial notice of information announced on party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination." *Williams*, 419 F. Supp at 482 (citing *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F.Supp.3d 156, 166 (S.D.N.Y. 2015) (internal quotations omitted)); *See also, Thorne v. Sq., Inc.*, 2-CV-5119-NGG-TAM, 2022 WL 542383, at * 1 (E.D.N.Y. Feb. 23, 2022) (taking judicial notice of archived pages from the Wayback Machine where plaintiffs did not dispute the accuracy of the archived pages or offer any rebuttal evidence).

---

[2]     Citations to the "Nakamura Decl." refer to the enumerated paragraphs of the Declaration of Stephen Nakamura in Further Support of Defendant MJA Holdings, Inc.'s Motion to Dismiss.

In the matter before this Court, MJA submitted an archived page from the Wayback Machine in connection with its original moving papers to demonstrate Going Quiet's use of the 321-917-0760 number. [*See* ECF No. 28-7] Plaintiff did not question its authenticity and the only rebuttal evidence that Plaintiff offered was half-hearted excuses. Plaintiff tries to explain away the appearance of 321-917-0760 across the internet as the fault of third parties, blaming GearFire and Google. It strains credulity that Plaintiff's 321-017-0760 number appeared as the contact number on the Going Quiet website for over 10 years and on Google maps listings (as well as all over the internet) as a result of third-party error. However, Plaintiff asks this Court to suspend its disbelief because numbers on the DNC registry are presumptively residential, relying on the notion that the internet is the cause of the purported mistakes.

However, the following simply cannot be a mistake:



[*See* Nakamura Decl., Ex. F]

The foregoing image can be found on the website www.armslist.com via the following link:

https://www.armslist.com/posts/14365241/space-coast-florida-handguns-for-sale--glock-19-gen-

4

3-factory-od-green--575. Armslist.com, as its name implies, is an online firearms marketplace. The webpage to which the link redirects the user (which is a redirect from the website Glocktalk.com) clearly shows a listing by Going Quiet with respect to the sale of a Glock 19 Gen 3 for $575. The webpage clearly identifies Going Quiet as a Premium Vendor and the listing clearly states:

> "Product Description [.] Brand new Glock 19 Gen 3 in factory OD green. These are factory made guns, they are not coated aftermarket - brand new with 2 mags. I used to sell these guns for $900 each after they were discontinued. Get them while they are back around! $575 cash/CWL picked up. Sold as pictured. Shipping available if you are not local. Will trade up or down as long as I can make money. I sell the following: Glock[,] Sig[,] HK[,] Colt[,] S&W[,] Gemtech[,] Advanced Armament[,] Silencerco[,] Dead Air[,] Aimpoint[,] Eotech[,] US Optics[,] Les Baer[,] Springfield[,] Kahr[,] Trijicon[.] If you want it, I can sell it to you - email me at REDACTED for a quote! Please do not send messages on this platform, they are very difficult to login to and respond for me. www.goingquiet.com" [Nakamura Decl., Ex. ___]

Importantly, the business card that appears next to the Glock reads: "DAVID TOM | 321-917-0760 | DAVID@GOINGQUIET.COM"; and at the bottom of the printout it indicates that it was last listed on March 25, 2025. Furthermore, a search of the Wayback Machine reveals that as of March 19, 2025, Goingquiet had multiple firearms for sale on www.armlist.com. In at least five (5) of these listings, the same business card, bearing the 321-917-0760, appears. [*See* Nakamura Decl., Ex. H and Ex. I] This is not, as Plaintiff would like the Court to believe, an issue of picking "sides in a swearing contest." It is also not a disputed issue of fact. It is a fact: 321-917-0760 is a business number.[3] Given the foregoing, Plaintiff's First Amended Complaint should be dismissed, with prejudice, and without leave to replead.

---

[3] While MJA acknowledges that Plaintiff has not yet had an opportunity to question the authenticity of the armslist.com webpage or the business card, he could do so with no more than a one-page submission. However, MJA is reasonably confident that both are authentic. Moreover, the above evidence makes it clear that achieving commonality in this purported class action would be nearly impossible given the voluminous discovery with respect to Plaintiff's business phone number.

II.    THERE WAS NO TEXT SENT IN VIOLATION OF THE REGULATIONS PRESCRIBED UNDER 47 U.S.C § 227(c)(5).

Section 227(c)(5) is clear on its face: it applies only to "more than one telephone call … in violation of the regulations." Plaintiff accuses MJA of rewriting the statute to say: "more than one *violative* telephone call." [*See* Opp. Memo at 18].  MJA is doing no such thing.  The statute itself speaks of "more than one telephone call" that is "in violation of the regulations."  The most natural reading is that Congress intended to address the following scenario: a defendant calls a consumer; the consumer instructs the caller not to call again; and the defendant nevertheless makes a second call.  In that situation, there are two calls, with one call in violation of the statute.

Plaintiff's reliance on *Gibbs v. SolarCity Corp.*, 239 F. Supp.3d 391 (D. Mass. 2017), is unavailing.  In *Gibbs*, the defendant argued that § 227(c)(5) applies only where a plaintiff received two or more calls that themselves violated the regulations. The *Gibbs* court rejected that argument, concluding that one violative call suffices so long as multiple calls were made within a twelve-month period. *See Gibbs,* 239 F.Supp.3d at 397.

It is Plaintiff—not MJA—who, relying on *Gibbs*, seeks to rewrite Congress's words.  Section 227(c)(5) expressly requires "more than one" call, whereas Section 227(b), governing autodialed and prerecorded calls, covers "*any call*." That textual difference must be respected.  As the Supreme Court has explained, "it is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another." *See BFP v. Resolution Tr. Corp.*, 511 U.S. 531, 537 (1994); *see also In re New Haven Projects Ltd. Liab. Co.*, 225 F.3d 283, 288 (2d Cir. 2000) (quoting *BFP v. Resolution Tr. Corp.*).  Had Congress intended a single-call threshold, it would have said so—just as it did in § 227(b).

6

III.    THE TCPA DOES NOT APPLY TO TEXT MESSAGES.

In opposing MJA's motion, Plaintiff also acknowledges the correctness of the Supreme Court's decision in *McLaughlin Chiropractic Assoc., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025), wherein the Court held: "District Court's are not bound by the [FCC's] interpretation, but must instead determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." Indeed, Plaintiff states: "This Court should do exactly what the Supreme Court has directed: 'interpret the statute as courts traditionally do under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation.'" [*See* Opp. Memo at 2 (citing *McLaughlin*, 606 U.S. at 168)].  Plaintiff's opposition also admits that "unless otherwise defined, statutory text is given its ordinary and plain meaning in the relevant context at the time Congress enacted the statute." [Opp. Memo at 4-5 (citing *Compare New Prime Inc. v Oliviera*, 586 U.S. 105, 113 (2019) (internal quotations omitted))].

Notwithstanding the foregoing admissions, Plaintiff still asserts that the holding in *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016) controls.  However, the language of 47 U.S.C. § 227(c)(5) is clear that it affords a private right of action only for "[a] person who has received more than one **telephone call** within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection . . ."  Texts are simply not referenced in § 227(c)(5).

Moreover, Plaintiff's tries to gloss over the Central District of Illinois' decision in *Jones v. Blackstone Med. Services, LLC*, 2025 WL 2042764 (C.D.Ill. July 21, 2025) wherein the Court held that "the TCPA does not regulate text messages[]" because "it is not for a court to legislate by reading into the TCPA something that is not there." *Jones*, 2025 WL 2042764, at *3 and *5.

7

Indeed, Plaintiff argues that MJA's reliance on *Jones* is MJA trying to "seize" on the decision of a "single Court" and that the reasoning in Jones (i.e., text messages did not exist in 1991) is unpersuasive. [*See* Opp Memo. at 7-8]. In so doing, Plaintiff tries to cast *Jones* as an outlier.

However, as Plaintiff acknowledges, albeit in a footnote[4], the United States District Court for the Northern District of Florida similarly held in no uncertain terms that "the statutory text here *is* clear, and a text message is not a "telephone call." *Davis v. CVS Pharm., Inc.*, No. 4:24-CV-477, 2025 WL 2491195, at *1 (N.D.Fla. Aug. 26, 2025). The Court in Davis further noted that neither *Campbell-Ewald* C*o. v. Gomez*, 577 U.S. 153 (2016), nor *Facebook, Inc. v. Duguid,* 592 U.S. 395 (2021), "includes any binding interpretation of the statutory term "telephone call" at issue here." *Davis*, 2025 WL 2491195, at *2. Moreover, the holdings in both *Jones* and *Davis* are consistent with Second Circuit precedent: "When interpreting a statute, we begin, as always, by giving effect to the plain meaning of the text—and, if that text is unambiguous, our analysis usually ends there as well." *Kerson v. Vermont Law School, Inc.*, 79 F.4th 257, 265 (2d Cir. 2023). To this end, because § 227(c)(5) references "more than one telephone call" and makes no reference to texts, MJA's motion to dismiss should be granted, with prejudice, and without leave to replead.[5]

IV.     NIETHER DEFENDANT RESIDES IN THE NORTHERN DISTRICT OF NEW YORK.

In opposing MJA's motion, Plaintiff admits that MJA maintains its principal place of business in Huntington, NY, which is located in the Eastern District. [*See* Opp. Memo. at 22] Despite this fact, Plaintiff takes the untenable position that "both Defendants are subject to

---

[4]     *See* Opp. Memo at 6, n. 2.

[5]     In arguing that MJA reads the term "violative" into Section 227(c)(5), Plaintiff actually relies on the omitted case cannon. [See Opp. Memo. at 18] However, "[u]nder the *casus omissus pro omisso habendus est* canon, a law "should not be read to include matter it does not include." *See A.M. Owners Mut. Protection and Indem. Assn., Inc. v. United States*, 489 F.Supp.3d 106, 132 (E.D.N.Y. 2020). Thus, based on Plaintiff's argued logic, Plaintiff's complaint must be dismissed.

jurisdiction here and have offices here." [Id., Section (D) at 22]  It is clear that MJA does not have an office in the N.D.N.Y.

As to co-defendant DSG, it is a Delaware limited liability company that conducts business in New York County, which is located in the Southern District. [*See* ECF No. 10, p.6 ("Delancey Street's address is 104 W 40th Steet, New York, New York 10018, . . .")]  Plaintiff does not contest this fact.  Rather, Plaintiff contends that because DSG's registered agent is located in Albany, DSG has an office in Albany and resides in the Northern District of New York for venue purposes.  This argument is without merit and flies in the face of the language of 28 U.S.C § 1391(b) and (d).

28 U.S.C. § 1391(b) provides that a civil action may be brought in any judicial district in which any defendant resides, so long as all defendants are residents of the state in which the district is located. [*See* 28 U.S.C. § 1391(b)(1)]  While it is unquestioned that both DSG and MJA are residents of the State of New York, neither is a resident of the N.D.N.Y.  Pursuant to 28 U.S.C. § 1391 (d): "in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to **subject it to personal jurisdiction if that district were a separate State**, . . ." [28 U.S.C. § 1391(d) (emphasis added)].

In the present matter, neither MJA nor DSG would be subject to jurisdiction in the N.D.N.Y if the N.D.N.Y were a separate state.  As to MJA, it simply has no connection to the N.D.N.Y. [*See* ECF No. 28-10, ¶¶ 5-6]  As to DSG, its sole connection to the N.D.N.Y is the address of its registered agent for services of process.  Indeed, the First Amended Complaint can only make this conclusory allegation, asserting that DSG "is a resident of this District, having its registered office in Albany."  [ECF No. 11, ¶ 9]  DSG's office is in New York County, NY. [Opp. Memo. at 6]

9

Neither the First Amended Complaint, nor Plaintiff's opposition, contain any allegations that DSG has any employees in the N.D.N.Y., a bank account, employees, contractors, forum-directed-conduct or other presence in the N.D.N.Y.  This lack of minimum contacts with the N.D.N.Y means that DSG would not be subject to personal jurisdiction in the N.D.N.Y.  Moreover, there are also no allegations in the First Amended Complaint or in Plaintiff's opposition that DSG has done anything to purposefully avail itself of the privilege of doing business in the N.D.N.Y.  Accordingly, Plaintiff's First Amended Complaint should be dismissed pursuant to F.R.C.P. Rule 12(b)(3) for lack of venue.  Alternatively, this matter should be transferred to the  E.D.N.Y. for those reasons set forth in MJA's original moving papers.

## CONCLUSION

For the foregoing reasons, defendant MJA Holdings, Inc. requests that the Court grant its motion to dismiss, and dismiss Plaintiff's First Amended Complaint in its entirety, with prejudice, and without leave to replead, or in the alternative, transfer this action to the United States District Court for the Eastern District of New York.

Dated: October 10, 2025
New York, New York                                Respectfully submitted,

By: _____
Stephen Nakamura
MERLE, BROWN & NAKAMURA, P.C.
*Attorneys for defendant, MJA Holdings, Inc.*
18 E. 41st Street, Suite 1906
New York, NY 10017
Tel. 212-471-2990, Ext. 105
Email: s.nakamura@mbnpc.com

10