UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

For Online Publication Only

-----------------------------------------------------------------------X

DAVID TOM,

           Plaintiff,

    -against-

**MEMORANDUM & ORDER**
26-cv-1150 (JMA) (ST)

**FILED**
**CLERK**

8/5/2026 2:53 pm

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

DELANCEY STREET GROUP LLC, MJA
HOLDINGS, INC.,

          Defendants.

-----------------------------------------------------------------------X

**AZRACK, United States District Judge:**

  Plaintiff David Tom brings this putative class action against Defendants Delancey Street Group LLC ("Delancey") and MJA Holdings, Inc. ("MJA") pursuant to the Telecommunications Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227. The Amended Complaint alleges that Defendants violated the TCPA by sending telemarketing texts to Plaintiff's cell phone number, which is listed on the national do-not-call registry. (ECF No. 11 ("Am. Compl.").)

  Before the Court are two motions to dismiss the Amended Complaint, one filed by each Defendant. (ECF No. 44 ("Delancey Mot."); ECF No. 49 ("MJA Mot.").) Plaintiff opposed both motions. (ECF No. 29 ("Pl. Delancey Opp."); ECF No. 50 ("Pl. MJA Opp.").) For the reasons set forth below, both motions to dismiss are GRANTED.

**I.  BACKGROUND**

**A. <u>Relevant Facts</u>**

  The facts set forth herein are taken from Plaintiff's Amended Complaint, documents incorporated by reference in or integral to that pleading, and matters of which the Court may take judicial notice. See Clark v. Hanley, 89 F.4th 78, 93 (2d Cir. 2023).

1

Plaintiff is an individual with a cell phone number beginning with area code (321).[1]  (Am. Compl. ¶ 19.)   Plaintiff alleges that this cell phone number is "a residential, non-commercial telephone number" that he uses "for personal, residential, and household reasons."  (Id. ¶¶ 19–20.) Since at least March 2024, Plaintiff's cell phone number has been listed on the national do-not-call registry.  (See id. ¶ 26.)

Defendant Delancey is New York company that sells debt restructuring services.  (Id. ¶ 5.) Defendant MJA is a New York company that operates a lead-generating telemarketing service. (Id. ¶ 6.)  Delancey hired MJA to generate leads for Delancey through telemarketing.  (Id. ¶¶ 43–47.)  MJA also does business under the name "MCA Justice."  (Id.; see also ECF No. 49 at 2.)

On March 6, 2025, MJA sent a text to Plaintiff's cellphone number that read:

> Hi, it's John with MCA Justice. Would it help if we cut your daily/weekly payments by 80% and convert to monthly? Reply 'Yes' for more information Text STOP to opt out[.]

(Id. ¶ 33.)  Plaintiff replied directly: "Yes."  (Id.)  The following exchange ensued:

> [MJA:] Can you send me your email so I can forward you what I need to get started.
>
> [Plaintiff:] Sure. David.m.tom@gmail.com
>
> [Plaintiff:] Don't text me email me only – about to board a plane no cell signal so WiFi works a lot better
>
> [MJA:] I just emailed you from john@mca-justice.com.  The subject line is MCA Justice.  I look forward to working with you.  Thank you for the opportunity.
>
> [MJA:] Please confirm receipt.

---

[1]   Plaintiff is no stranger to TCPA litigation.  Indeed, since September 2022, Plaintiff has filed fifteen TCPA lawsuits, including this one, in district courts around the country.  See Tom v. Modern Concepts Construction LLC, No. 22-cv-1644 (M.D. Fla. 2022); Tom v. Atlantic Partners Realty Brevard, LLC et al., No. 22-cv-2217 (M.D. Fla. 2022); Tom v. Kloze Mortgage Corp. et al., 22-cv-2218 (M.D. Fla. 2022); Tom v. Transportation Media, Inc., No. 22-cv-1296 (W.D. Tex. 2022); Tom v. Lead Genesis Partners, LLC, No. 24-cv-417 (M.D. Fla. 2024); Tom v. 7th Ace, LLC, No. 24-cv-00761 (M.D. Fla. 2024); Tom v. Forbes & York Insurance LLC et al., No. 24-cv-01208 (D. Colo. 2024);. Tom v. Thomas Roofing and Repair Inc., No. 24-cv-01037 (M.D. Fla. 2024); Tom v. Forbes & York Insurance LLC et al., No. 24-cv-01320 (M.D. Fla. 2024); Tom v. Consider Solar, LLC, No. 24-cv-01100 (E.D. Va. 2024); Tom v. Local Search Group LLC, No. 24-cv-02887 (S.D. Tex. 2024); Tom v. US Solar Quotes LLC, No. 24-cv-01647 (M.D. Fla. 2024); Tom v. Ellington Service Corporation, et al., No. 24-cv-01859 (M.D. Fla. 2024); Tom v. Premier Home Solutions, LLC, No. 24-cv-13195 (D. Mass. 2024).

(Id.)  Later that day, MJA texted again:

> Hi, it's John at MCA-Justice.  Take a look at my email and let me know if you have any questions.  I would like to be able to help you.  Have a good night.

(Id.)  On March 7, MJA texted:

> Hi, it's John at MCA-Justice.  I will be working Saturday and Sunday if you would like to review my email and discuss any questions you might have. Thank you[.]

(Id.)  On March 8, MJA texted:

> Hi, it's John at MCA-Justice. Did you get a chance to review my email?

(Id.)  On March 10, MJA texted again:

> Hi, it's John at MCA-Justice.  Did you get a chance to review my email?

(Id.)  After Plaintiff told MJA, via text, to contact him via email rather than text because he was about to board a plane, Plaintiff never again responded to MJA via text.  (See id.)

Plaintiff alleges that he responded "Yes" to MJA's initial text "to identify the caller contacting him illegally using an illegal fictitious name and for no other reason."  (Id. ¶ 34.)  The Amended Complaint includes an excerpt from the email exchange between Plaintiff and john@mca-justice.com, in which MJA revealed that it is "a marketing arm for Delancey Street" and that "Delancey Street is the actual Organization that will be handling the MCA Debt Restructure."  (Id. ¶ 38.)

## B. **Procedural History**

Plaintiff filed suit in the Northern District of New York on May 6, 2025 and filed an Amended Complaint on July 14, 2025.  (ECF No. 11.)  The Amended Complaint alleges three causes of action.  Count I alleges that Defendants initiated telephone solicitations to Plaintiff and other class members' telephone numbers on the national do-not-call registry, in violation of the TCPA and 47 C.F.R. § 64.1200(c)(2).  (Id. ¶¶ 87–92.)  Count II alleges that Defendants initiated telephone solicitations to Plaintiff and other class members without transmitting required caller identification information, as required by the TCPA and 47 C.F.R. § 64.1601(e)(1).  (Id. ¶¶ 93–

98.)  Count III alleges that Defendants continued sending telemarketing solicitations to Plaintiff and other class members after they were asked to stop.  (Id. ¶¶ 99–102.)  All three causes of action are asserted pursuant to the private right of action set forth in 47 U.S.C § 227(c)(5).

Delancey filed a motion to dismiss Plaintiff's original Complaint on June 23, 2025, (ECF No. 8), and a supplemental brief addressing the Amended Complaint on August 8, 2025, (ECF Nos. 17).  On August 22, 2025, MJA filed a motion to dismiss the Amended Complaint.  (ECF No. 28.)   Both motions, as originally filed in the Northern District of New York, sought to have the case dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, dismissed or transferred for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3).  (ECF Nos. 8, 17, 28.)  On February 27, 2026, the Honorable Glenn T. Suddaby transferred the action to this district, reserving judgment on the motions to dismiss for decision by this Court.  (ECF No. 40.)  On April 2, 2026, each Defendant re-filed its fully briefed motion in accordance with this Court's Individual Rules.  (See ECF Nos. 43, 44, 50 (Delancey filings); ECF Nos. 46, 47, 48, 49, 51, and 52 (MJA filings).)

## II.   LEGAL STANDARD

To survive a motion to dismiss brought under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  That standard requires the Court to accept as true all well-pled factual allegations in the Complaint.  See Clark, 89 F.4th at 90. The Court need not accept conclusory assertions, legal conclusions, or formulaic recitation of a claim's elements. See, e.g., In re Facebook, Inc., IPO Derivative Litig., 797 F.3d 148, 159 (2d Cir. 2015).  Determining whether a Complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 664.

4

### III.    DISCUSSION

**A.  <u>Regulatory Framework</u>**

Congress passed the Telecommunications Consumer Protection Act of 1991, 47 U.S.C. § 227, to restrict unwanted telemarketing solicitations to consumers.

The instant action primarily involves § 227(c) of the TCPA, which authorizes the Federal Communications Commission (the "FCC") to prescribe regulations that "protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." <u>See</u> 47 U.S.C. § 227(c)(1); 47 C.F.R. §§ 51, 52, 64.  The TCPA and its implementing regulations thus provide for the creation of "a national database . . . of telephone numbers of residential subscribers who object to receiving telephone solicitations," also known as a "do-not-call registry." <u>See</u> 47 U.S.C. §§ 227(c)(3); 47 C.F.R. § 64.1200(c)(2).  It is a violation of § 227(c) to "initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry."  47 U.S.C. § 227(c)(3)(F); 47 C.F.R. § 64.1200(c)(2).

However, a solicitation does not violate § 227(c) if it is made with the subscriber's "prior express invitation or permission."  47 C.F.R. § 64.1200(c)(2)(ii).  A subscriber may revoke prior consent "by using any reasonable method to clearly express a desire not to receive further calls or text messages from the caller or sender[,] including by using "the words 'stop,' 'quit,' 'end,' 'revoke,' 'opt out,' 'cancel,' or 'unsubscribe' sent in reply to an incoming text message[.]" <u>Id.</u> § 64.1200(a)(10).  If the subscriber uses any words other than those listed, "the caller must treat that reply text as a valid revocation request if a reasonable person would understand those words to have conveyed a request to revoke consent[.]" <u>Id.</u>  A caller must honor a subscriber's revocation "within a reasonable time not to exceed ten business days from receipt of such request." <u>Id.</u>

Section 227(c) provides a private right of action to any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]" 47 U.S.C. § 227(c)(5).

Additionally, the TCPA's implementing regulations require that "any person or entity that engages in telemarketing . . . must transmit caller identification information." 47 C.F.R. § 64.1601(e)(1).

## B. **Plaintiff Fails to Allege "More Than One" Non-Consensual Call**

Defendants argue that the texts did not violate § 227(c)(5) and implementing regulations because, inter alia: (1) Plaintiff's cell phone number is not residential, as is required by 47 C.F.R. § 64.1200(c)(2), and (2) Plaintiff did not receive "more than one" non-consensual solicitation, as is required by 47 U.S.C. § 227(c)(5).[2]  As explained below, the Court concludes that, regardless of whether Plaintiff's cell phone number is residential, Plaintiff fails to state a claim because he has not alleged that he received "more than one" solicitation that violated § 227(c) and its implementing regulations.

### 1.   **Whether Plaintiff's Phone Number is Residential**

Defendants argue that the texts did not violate § 227(c)'s implementing regulations because Plaintiff's cell phone number is a business number, not a residential number as Plaintiff alleges. (See ECF No. 49 at 9–12; ECF No. 44 at 8–11.)   Defendants point to evidence outside the pleadings to support this claim, including the complaint in one of Plaintiff's fourteen other TCPA actions, Tom v. Consider Solar, No. 22-cv-01100 (E.D. Va 2024), in which he alleges that a different phone number is his residential landline. (ECF No. 47 ¶ 5).  Plaintiff maintains that the phone number in the instant action is a personal cell phone number that he does not regularly use

---

[2] It is uncontested that Plaintiff's phone number was listed on the national do-not-call registry.

for business and that he is entitled to a presumption at the pleading stage that his cell phone is residential.  (ECF No. 50 at 14–16.)

The Court does not reach the issue of what evidence is admissible at the pleading stage to determine whether a phone number is residential or commercial because, for reasons discussed infra, the Court grants the motion to dismiss based on the numerical threshold in § 227(c)(5).

### 2.  Whether Plaintiff Received Multiple Violative Solicitations

If MJA violated § 227(c) at all, it did so only by sending the first text message to Plaintiff's registered number, which read: "Hi, it's John with MCA Justice. Would it help if we cut your daily/weekly payments by 80% and convert to monthly? Reply 'Yes' for more information[.] Text STOP to opt out[.]"  (See Am. Compl. ¶ 33.)  As discussed below, MJA's subsequent texts were not violations because when Plaintiff replied "Yes" to that first text message, Plaintiff provided MJA with "prior express invitation or permission" to send him future texts.

Plaintiff does not meaningfully dispute that he consented to receive further texts from MJA when he replied "Yes" to MJA's initial text.  (See ECF No. 50 at 16–17.)  His sole argument is that he was "merely feigning interest" to determine the identity of the telemarketer for the purposes of filing a TCPA suit, and that his decision to "play along" is "insufficient to establish prior consent."  (Id. at 17.)  This argument is meritless.  Plaintiff claims that the decisions in two out-of-Circuit district court cases "counsel[] that the Plaintiff may identify that the calls were solicitations by playing along with a caller to ascertain the nature of its sales pitch, exactly as alleged here, not consenting[.]"  (Id. at 17 (citing Shelton v. Nat'l Gas & Elec., LLC, No. 17-cv-4063, 2019 WL 1506378, at *4 (E.D. Pa. Apr. 5, 2019); Bradley v. DentalPlans.com, No. 20-cv-1094, 2024 WL 2865075, at *15 (D. Md. June 6, 2024)).)  However, neither of these cases supports Plaintiff's contention that a TCPA plaintiff's subjective intent to "play along" renders irrelevant his consent to receive solicitations for purposes of § 227(c).  In Shelton, the district court held that

7

a TCPA plaintiff who returned a missed telemarketing call to identify the caller for litigation purposes had sufficiently alleged a constitutional injury-in-fact. 2019 WL 1506378, at *5. There, the question was not whether the plaintiff had provided express invitation or permission to receive solicitations, but whether a missed call can constitute a violation of a TCPA provision not at issue in the instant action, § 227(b)(1). See id. (explaining that plaintiff was injured because a defendant violates § 227(b)(1) by making even one call "using any [automated telephone dialing system] . . . to any telephone number assigned to a . . . cellular telephone service," regardless of whether the call was answered). Meanwhile, Plaintiff cites Bradley for the proposition that consent cannot "be obtained on and during the course of an illegal call." (ECF No. 50 at 17 (citing Bradley, 2024 WL 2865075, at *15).) Plaintiff's purported rule is nowhere to be found in that case, which applied the consent standard found in a different TCPA provision from the one relevant to this case and in any event is no longer good law. See Bradley v. Dentalplans.com, No. 20-cv-1094, 2026 WL 788856, at *9 (D. Md. Mar. 20, 2026) (granting defendant's reconsideration motion and holding that the plaintiff's oral consent to receive future pre-recorded calls was sufficient such that defendant did not violate TCPA § 227(b)(1) as a matter of law.)[3] Accordingly, neither of the cases cited by Plaintiff supports his claim that his consent was ineffective because he consented for the

---

[3]    In Bradley, the district court initially applied 47 C.F.R. § 64.1200(a)(2)'s requirement that a defendant accused of making pre-recorded telemarketing calls in violation of TCPA § 227(b)(1) must obtain the recipient's "prior express written consent" to receive such calls. 2024 WL 2865075, at *8 (emphasis added). The court accordingly denied defendant's motion for summary judgment, finding that there remained a factual dispute as to whether the plaintiff's oral consent to receive pre-recorded calls about her Cigna dental plan constituted "prior express written consent" to receive "win back" calls from Cigna after her plan had expired. Id. at *1–2, 7–8. However, the court later granted defendant's reconsideration motion, holding that the § 64.1200(a)(2)'s "prior express written consent" requirement derived from a misinterpretation by the FCC of TCPA § 227(b)(1)—which requires only "prior express consent"— and that the FCC's "written consent" requirement is no longer due any deference from courts after Loper Bright Enters. v. Raimondo, 603 U.S. 369 (2024), and McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp., 606 U.S. 146 (2025). See Bradley v. Dentalplans.com, No. 20-cv-1094, 2026 WL 788856, at *9 (D. Md. Mar. 20, 2026); accord Bradford v. Sovereign Pest Control of TX, Inc., 167 F.4th 809 (5th Cir. 2026). Thus, the court held that plaintiff's consent satisfied the statute's "prior express consent" standard and that defendant's conduct did not violate the TCPA.

sole purpose of identifying the sender, nor has the Court identified any other case supporting this position.

Plaintiff alternatively argues that, even if he did consent, he quickly revoked that consent by writing "Don't text me email me only[,]" thereby making the subsequent six messages non-consensual in violation of § 227(c). (ECF No. 50 at 20.) This argument is unavailing. Plaintiff did not revoke his consent to receive further texts by writing "Don't text me email me only – about to board a plane no cell signal so WiFi works a lot better[.]" (ECF No. 50 at 20; Am. Compl. ¶ 33.) This text did not contain any of the words that must be treated as presumptive revocations, such as "stop," "quit," or "unsubscribe." See 47 C.F.R. § 64.1200(a)(10). Indeed, MJA's initial text message clearly informed Plaintiff that he could "text STOP to opt out" of further messages, but he did not do so. (Am. Compl. ¶ 33.) The relevant question is thus whether a reasonable person would understand Plaintiff's text to have conveyed a request to revoke his prior consent. See 47 C.F.R. § 64.1200(a)(10). The Court concludes that any reasonable person would interpret Plaintiff's text as an expression of his temporary preference for e-mail over text due to the lack of in-flight cell service, not as a permanent revocation of his consent to receive text messages. Notably, all MJA's subsequent texts to Plaintiff were for the purpose of inquiring whether Plaintiff had received the requested email or would like to discuss its contents, indicating that this is precisely how MJA interpreted Plaintiff's message. (Am. Compl. ¶ 33.) Moreover, even if Plaintiff's text could be understood as a revocation request, MJA honored that request within four days, which is a reasonable period and is significantly less time than the "ten business days" maximum contemplated by § 64.1200(a)(10).

Accordingly, the Court concludes that Plaintiff gave MJA express permission to send him text messages from MJA by replying "Yes" to MJA's initial message and that Plaintiff did not revoke that consent.

Plaintiff next argues that, even if only the first text message violated § 227(c), he nevertheless satisfies the "more than one" requirement in § 227(c)(5).  According to Plaintiff, § 227(c)(5) extends a private right of action to plaintiffs who can satisfy two distinct and unrelated conditions: (1) "a numerosity gate," which requires that a plaintiff received more than one call from the same entity within twelve months, and (2) "a violations gate," which requires that at least one of those calls violated the regulations promulgated under § 227(c).  (ECF No. 50 at 17.) Plaintiff thus argues that non-violative calls "unquestionably" count toward the "more than one" numerical threshold.  (Id. at 18.).

Plaintiff's strained interpretation of § 227(c)(5) has no basis in the statutory text or case law.  Again, § 227(c)(5) extends a private right of action to any individual who received "more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under [§ 227(c).]"  47 U.S.C. § 227(c)(5) (emphasis added).  The plain meaning of this text requires more than one telephone call that violates § 227(c)'s implementing regulations.  If Congress had intended to say "more than one call, with at least one call in violation of the regulations[,]" it would have done so.  See Dean v. United States, 556 U.S. 568, 572 (2009) ("[Courts] ordinarily resist reading words or elements into a statute that do not appear on its face." (quoting Bates v. United States, 522 U.S. 23, 118 (1997)).)  Plaintiff cites a single out-of-Circuit district court case, Gibbs, in support of his position, and even that case does not say what Plaintiff claims.  (See ECF No. 50 at 18 (citing Gibbs v. SolarCity Corp., 239 F. Supp. 3d 391, 397 (D. Mass. 2017).)  Although the plaintiff in Gibbs argued that a non-violative call can count toward § 227(c)(5)'s numerical threshold, the court did not decide the question because it concluded that the plaintiff had received multiple violative calls.  See Gibbs, 239 F. Supp. at 397 ("The complaint alleges numerous unsolicited calls after [plaintiff's] first revocation of consent.  Certainly 'more than one,' which is all that is required.").  This Court has not identified

a single case that adopts Plaintiff's interpretation of the private right of action provision; indeed, courts widely assume that multiple violative calls are required to state a claim under § 227(c)(5). See, e.g., Silva v. Seven Rock Life Corp., No. 23-cv-6407, 2024 WL 3228437, at *5 (E.D.N.Y. June 28, 2024) (holding that plaintiff stated a claim under § 227(c)(5) where she alleged "that she received more than one unsolicited telephone solicitation" to her registered number); Gillam v. Reliance First Cap., LLC, No. 21-cv-4774, 2023 WL 2163775, at *3 (E.D.N.Y. Feb. 22, 2023) (dismissing § 227(c)(5) claim because, though plaintiff alleged multiple calls, he failed to allege that more than one of the calls was a "solicitation" as required by § 227(c)); Greene v. Select Funding, LLC, No. 20-cv-07333, 2021 WL 4926495, at *5 (C.D. Cal. Feb. 5, 2021) (similar).

To the extent that Plaintiff argues that the "more than one" requirement is satisfied by his allegation that all of MJA's texts violated the TCPA regulations' caller identification requirement, 47 C.F.R. § 64.1601(e)(1), the Court notes that there is no in-Circuit case law addressing whether such violations can support a claim under the private right of action in 47 U.S.C. § 227(c)(5). Other district courts are divided on the question because, when the FCC passed § 64.1601(e) in 2003, the agency did not specify which subsection of the TCPA the regulation implements. Compare, e.g., Worsham v. Travel Options, Inc., No. 14-cv-2749, 2016 WL 4592373, at *4–5, 7 (D. Md. Sept. 2, 2016), aff'd, 678 F. App'x 165 (4th Cir. 2017) (holding that § 64.1601(e)(1) violations are not actionable under § 227(c)(5) because "[a]ny violation of § 64.1601(e)(1) is a violation of technical and procedural standards under subsection d, and as earlier noted, no private right of action exists under [that subsection]"); Meyer v. Capital Alliance Group, No. 15-cv-2405, 2017 WL 5138316, at *17 (S.D. Cal. Nov. 6, 2017) (same); Griffin v. Am.-Amicable Life Ins. Co. of Texas, No. 24-cv-00243, 2024 WL 4333373, at *3 (D. Or. Sept. 27, 2024) (same), with, e.g., Dobronski v. Selectquote Ins. Servs., No. 23-cv-12597, 2025 WL 900439, at *3 (E.D. Mich. Mar. 25, 2025) (disagreeing with the "majority approach" and concluding that § 64.1601(e)(1) was most

likely promulgated pursuant to § 227(c) and therefore that violations of that regulation are actionable under § 227(c)(5)); Newell v. JR Cap., LLC, 791 F. Supp. 3d 571, 582 (E.D. Pa. 2025) (same).  There being no controlling precedent on this question, this Court is persuaded by the majority approach, which finds there is no private right of action given § 64.1601(e)(1)'s silence on the matter.  See Meyer, 2017 WL 5138316, at *17 (citing Ziglar v. Abbasi, 582 U.S. 120, 133, (2017)).

In sum, because Plaintiff received only one solicitation from MJA that violated § 227(c)'s implementing regulations, Plaintiff fails to state a claim for relief pursuant to the private right of action in § 227(c)(5), which requires "more than one" violative call.  Because the Court grants the instant motions to dismiss on this ground, the Court does not reach the other questions raised by the motions.[4]

## C. **Leave to Amend**

In the conclusion of each of his opposition briefs, Plaintiff requests leave to file a Second Amended Complaint.  (See ECF No. 29 at 25; ECF No. 50 at 25.)  "A court should freely give leave when justice so requires, but it may, in its discretion, deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  MSP Recovery Claims, Series LLC v. Hereford Ins. Co., 66 F.4th 77, 90 (2d Cir. 2023) (affirming denial of leave to amend). "Futility is a determination, as a matter of law, that proposed amendments

---

[4]    Defendants make several other arguments in support of their motions to dismiss.  For instance, Delancey argues that it cannot be held directly or vicariously liable for text messages sent by MJA.  (ECF No. 44 at 11–20.) Delancey also argues that the Amended Complaint fails to state a claim that Defendants did not honor Plaintiff's do-not-call request within a reasonable time.  (Id. at 22–24.)  Most notably, MJA argues that the text messages MJA sent to Plaintiff are not actionable because they are not "telephone calls" within the scope of § 227(c)(5).  (ECF No. 49 at 5–9.)  The Court notes that the Seventh Circuit recently became the first Court of Appeals to decide this question, holding that text messages are not telephone calls for purposes of § 227(c)(5).  Steidinger v. Blackstone Med. Servs., No. 25-cv-2398, 2026 WL 2028517, at *5 (7th Cir. July 14, 2026).  But see Wilson v. Better Mortg. Corp., 811 F. Supp. 3d 631 (S.D.N.Y. 2025) (concluding that text messages are covered by Section 227(c)(5)); Silva v. Seven Rock Life Corp., No. 23-cv-6407, 2024 WL 3228437, at *5 (E.D.N.Y. June 28, 2024) (treating text messages as telephone calls for purposes of § 227(c)(5)).  The instant motions do not require this Court to decide whether text messages are covered by § 227(c)(5) because, even if they do count, Plaintiff has not met the provision's numerical threshold.

would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." In re Tribune Co. Fraudulent Conv. Litig., 10 F.4th 147, 175 (2d Cir. 2021) (affirming denial of leave to amend).

Here, leave to amend would be futile because Plaintiff has already provided screenshots of the full text exchange between himself and MJA, (see Am. Compl. ¶ 33), and the Court has concluded that those texts are insufficient as a matter of law to state a claim under § 227(c)(5) of the TCPA. Plaintiff has not identified any facts that, if added to the Second Amended Complaint, would help him to meet the pleading standard. "Denial of leave to amend is proper 'where the request gives no clue as to how the complaint's defects would be cured.'" Noto v. 22nd Century Grp., Inc., 35 F.4th 95, 107 (2d Cir. 2022) (quoting Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 190 (2d Cir. 2015)) (denying leave to amend where plaintiffs made the request in a conclusory fashion and only in the conclusion to their opposition brief); see also Oden v. Bos. Sci. Corp., 330 F. Supp. 3d 877, 904 & n.4 (E.D.N.Y. 2018) ("Plaintiff's request to amend, contained solely in his opposition memorandum, is procedurally defective since 'a bare request to amend a pleading contained in a brief, which does not also attach the proposed amended pleading, is improper under Fed. R. Civ. P. 15.'") (quoting Koehler v. Metro. Transportation Auth., 214 F. Supp. 3d 171, 178 (E.D.N.Y. 2016)).

## IV. CONCLUSION

For the reasons articulated above, Plaintiff's claims are hereby DISMISSED with prejudice and without leave to amend. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

Dated:    August 5, 2026
        Central Islip, New York

                             /s/ JMA
                          JOAN M. AZRACK
                          UNITED STATES DISTRICT JUDGE